## JOHN E. COLLINS'S CASE.

Suffolk. November 12, 1985. — January 31, 1986.

Present: BROWN, CUTTER, & DREBEN, JJ.

*Workmen's Compensation Act,* Prima facie evidence, Presumptions and burden of proof, Expert opinion. *Evidence,* Presumptions, Expert opinion.

The single member of the Industrial Accident Board who heard a workmen's compensation case, and the reviewing board, erred in ruling that G. L. c. 152, § 7A, was inapplicable to establish a prima facie case that the employee's claim was compensable where there was no dispute that an incident occurred while the employee was working at his place of employment, that he became disabled and unable to testify during the first twenty-four hours of hospitalization following the event, and that he had never regained his mental abilities. [558-560]

Where, in a workmen's compensation case, the opinions of the insurer's doctors, that the employee's injury was not causally related to his work, appeared to be based on a hearsay statement contained in a hospital record, not in evidence, to the effect that the employee "had been seated and doing some work" at the time of the incident in question, where there was evidence in the case that the employee had been engaged in "extremely heavy work" for a number of hours before the incident, and where the extent to which physical effort had been exerted by the employee was an important issue in determining whether his injury was causally related to his employment or was just a coincidence, it was error to deny the employee's motions to strike the opinions of the doctors. [560-564]

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *Jeremiah J. Sullivan,* J., sitting under statutory authority.

*John J. Nolan* for the employee.

*Richard N. Curtin* for the insurer.

DREBEN, J. Two issues[1] are presented in this employee's appeal from a judgment affirming the denial and dismissal of

---

[1] Other issues argued by the employee, relating to the admission or exclusion of evidence by the single member, were not before the Superior

his claim for compensation by the reviewing board (board) of the Industrial Accident Board. The employee urges that the single member and the board erroneously ruled that the prima facie effect of G. L. c. 152, § 7A, did not apply and that they also improperly considered opinion evidence of two physicians which was based in part on facts not admitted in evidence. We agree that there was error in the decision of the board and reverse the judgment.

The findings and decision of the single member which were adopted by the board explain that the employee had been employed by the town of Foxborough as a general laborer and that his duties included snowplowing and road building. "The Employee was performing his regular work-related duties on March 22, 1973, when he was found by fellow employees slumped on the ground. He had been removing gravel from a truck, which he would put into a wheelbarrow and deposit the gravel into a trench." The employee was taken to a hospital, where the examining physician found slurred speech and paralysis. Although the employee's speech became normal an hour after arrival at the hospital, his condition worsened during the first twenty-four hours of hospitalization and he became totally disabled.

The primary factual issue was whether the employee's injury was causally related to his employment. "Adopting" the medical opinions of the two physicians deposed by the insurer,[2] the single member found that "the Employee has failed to prove by a fair preponderance of the evidence presented that an injury was sustained on March 22, 1973, arising out of and in the course of his employment."

1. *Applicability of G. L. c. 152, § 7A.* The employee, who in 1980 was under permanent guardianship as a mentally ill person, was physically and mentally unable to testify at the hearings. He sought by means of two separate motions to estab-

---

Court judge or this court, as the record does not show that such issues were preserved by raising them before the board. *Indrisano's Case,* 307 Mass. 520, 521 (1940). *Haley's Case,* 356 Mass. 678, 682 (1970).

[2] The deposition testimony and reports of the two physicians were admitted without objection before the single member.

lish a prima facie case for compensation by reason of G. L. c. 152, § 7A. That statute is set forth in the margin.[3] If applicable, § 7A provides in substance that in the case of an employee unable to testify, "it shall be prima facie evidence that the employee was performing his regular duties on the day of injury" and that the claim is compensable. Unless that prima facie evidence is met and overcome by evidence sufficient to warrant a contrary conclusion, the employee is entitled to benefits. A finding for the employee is warranted "without actual medical evidence of causal relationship." *Anderson's Case,* 373 Mass. 813, 818 (1977).

The single member denied both motions to have § 7A apply. His explanation for denying the employee's first motion was that the current inability of the employee to testify was not a ground for the application of the statute as "an attorney could or would merely wait until an Employee died, then file a Claim under Section 7A." In the single member's view what is required is "that one must establish *immediacy*; i.e., an immediate connection between the workplace and the death, injury or disability of the Employee." (Emphasis in original.)

Here, however, there is no dispute that an incident occurred while the employee was working at his place of employment or that he became disabled and unable to testify during the first twenty-four hours of hospitalization following that event. The employee has never regained his mental abilities.

In these circumstances, we conclude that the time elements required by the statute have been met.[4] There is no suggestion

---

[3] General Laws c. 152, § 7A, as appearing in St. 1971, c. 702, provides:

> "In any claim for compensation where the employee has been killed, or found dead at his place of employment or is physically or mentally unable to testify, it shall be prima facie evidence that the employee was performing his regular duties on the day of injury or fatality or death or disability and that the claim comes within the provisions of this chapter, that sufficient notice of the injury has been given, and that the injury or death or disability was not occasioned by the wilful intention of the employee to injure or kill himself or another."

[4] We need not consider whether the provision would also apply to a subsequent testimonial disability of an employee.

in the record that the delay in hearing, reached by agreement, was to obtain the advantage of the statute. For § 7A to be applicable, no additional connection between the workplace and the injury need be shown. Once in effect, the statute establishes "prima facie evidence of causal relationship between the employment and the injury." *Anderson's Case,* 373 Mass. at 816-817.

The single member in denying the employee's second motion for the application of § 7A expressed concern lest the insurer be denied a "right of constitutional dimension." That concern seems misplaced, as the insurer is entitled to overcome the prima facie evidence of § 7A by introducing other evidence. Moreover, the statute does not affect the admissibility of any admissions of the employee made at a time prior to his disability or made during a lucid interval at the hospital. We hold, therefore, that the single member and the board erred in ruling G. L. c. 152, § 7A, inapplicable. See generally Locke, Workmen's Compensation § 221 (2d ed. 1981).

2. *Opinions of physicians.* We turn next to the medical evidence of the insurer. Prior to the hearing before the board, the employee sought to strike the opinion evidence of the two physicians (Dr. Sagall and Dr. Winkler) who were witnesses for the insurer on the issue of causal relationship. The motion to strike was based on the claim that the opinions were predicated on facts not in evidence.

The testimony of Dr. Egan, the claimant's physician, indicates that an important issue in determining whether the injury was causally related to the employee's employment, or was just a coincidence, was the extent to which physical effort was exerted by the employee prior to the incident. The only document admitted in evidence bearing on this issue was the employer's first report of injury, dated April 11, 1973.[5] That report

---

[5] There appears to have been no objection to the admission of this document. *O'Hara's Case,* 310 Mass. 223, 227 (1941). See *Wingate* v. *Emery Air Freight Corp.,* 385 Mass. 402, 405-407 (1982). Cf. *Carroll's Case,* 225 Mass. 203, 208 (1916), and compare with *Gerry* v. *Worcester Consol. St. Ry.,* 248 Mass. 559, 568 (1924).

stated that "there was tremendous physical exertion used when trying to close [scuttle door][6] resulting in his collapse."

The direct evidence[7] as to what the employee had been doing came from a fellow employee. He testified that on the day of the incident the employee's work consisted of taking stones from a truck to a trench, that this involved putting a wheelbarrow under a hole in the truck and using a "scuttle mechanism that opens and closes the hole." He testified that moving the scuttle involves "substantial effort," and that Collins had been working for two and one-half to three hours prior to the incident.

Despite the lack of any substantive evidence supporting their recitals, both Dr. Sagall and Dr. Winkler in their opinions specifically referred to a hearsay statement contained in a hospital record, never put in evidence, explaining what the employee was doing at the time of the incident. Dr. Sagall's July 6, 1973, letter included the following: "The records of the Sturdy Memorial Hospital for the admission of March 22nd to April 17, 1973, stated that this man, employed as a laborer for the Town of Foxboro, was seated and doing some work at the rear of a truck on the morning of admission when he suddenly noted that he did not have the strength to get to his feet. His speech was garbled . . . . Based on the pathology which has been diagnosed, namely, a cerebral artery thrombosis, *and the sequence of events elaborated,* it is my opinion that this condition resulted solely" from natural progression of arteriosclerotic disease "and was not causally connected to or proximately precipitated by his work activities." (Emphasis supplied.)

---

[6] The scuttle door controlled the flow of stones from the truck to the wheelbarrow.

[7] There was also evidence from the employee's son who stated that at the time his father was lucid in the hospital he gave the following account. "He indicated to me he was working unloading, I believe, it was some sort of stone off a dump truck. He was putting them in a wheelbarrow. When the barrow was full, he went to close, I believe, the scuttle door, and the door was jammed and the load was still spilling out. He attempted to get the door shut. He couldn't get the door shut. The next thing he remembered was lying on the ground."

Dr. Winkler, who, unlike Dr. Sagall, had not examined the employee, also based his opinion[8] on hospital and other records not in evidence as well as on two medical reports of Dr. Sagall which contain material the claimant seeks to strike. Dr. Winkler's clinical summary gave the following explanation of the March 22, 1973, incident. "The history obtained by [the admitting physician] stated that the patient had been seated and doing some work at the rear of a truck when he suddenly noted that he did not have the strength to get to his feet. When people came to assist him, his speech was garbled and he wasn't able to make himself understood. For that reason he was taken to the hospital."

The report of Dr. Egan, the employee's physician, was based on different facts. In his report, he described the employee as having been engaged "in heavy work"[9] and in his deposition stated that the employee was engaged in "extremely heavy work." On cross-examination he indicated that "heavy repetitive work would be a factor [in precipitating the incident], and light duty would probably have nothing to do with it."

It is apparent that the recitation in the hospital record that "the employee had been seated and doing some work . . . when he suddenly noted that he did not have the strength to get to his feet" may have influenced the two medical opinions.[10] See *Fiander's Case,* 293 Mass. 157, 163 (1936). Even though such history may have been "open to the inspection of the division" (G. L. c. 152, § 20, as amended through St. 1953, c. 314, § 6), where what the employee was doing at the time was an issue of fact before the board, the history may not be regarded by reason of that statute alone to be in evidence and

---

[8] Dr. Winkler also believed "nutritional deprivation associated with alcoholism" caused the employee's mental disturbances. There was no evidence admitted of nutritional deprivation.

[9] Although the first sentence of the third paragraph of Dr. Egan's letter of March 30, 1977, was struck by agreement, the first paragraph of page two of his letter also described the work.

[10] The physicians were not asked whether their opinions would have been different if they had heard the testimony of the other witnesses (particularly the fellow worker) or if the employee had been engaged in heavy work for several hours on the morning of March 22, 1973.

thereby corroborate the findings of the insurer's physicians. *Id.* at 164.

Where specific facts are in controversy, "[e]xpert opinion . . . must be based on either the expert's direct personal knowledge, on evidence already in the record or which the parties represent will be presented during the course of the trial, or on a combination of these sources." *LaClair* v. *Silberline Mfg. Co.,* 379 Mass. 21, 32 (1979). *Charron's Case,* 331 Mass. 519, 522-523 (1954). *Cormier's Case,* 337 Mass. 714, 716 (1958). *Buck's Case,* 342 Mass. 766, 771 (1961). *Soares* v. *Stop & Shop Cos.,* 16 Mass. App. Ct. 979, 979-980 (1983). See *Haley's Case,* 356 Mass. 678, 680-682 (1970). In *Soares* v. *Stop & Shop Cos.,* 16 Mass. App. Ct. at 980, the decision relied on by the insurer, *Trani's Case,* 4 Mass. App. Ct. 857 (1976), was said not to reflect current Massachusetts law. See Liacos, Massachusetts Evidence 125 (5th ed. 1981). Compare Locke, Workmen's Compensation §§ 518-519 (1981 and Supp. 1984), which may have gone to press before the *Soares* case was decided and thus may require revision.

Because no evidence was introduced to prove the facts upon which the doctors relied, at least in part, "it was then in order when the case was before the reviewing board [for the objecting party] to move to strike the opinion of the doctor in so far as it was based in any way upon facts not proved." *Charron's Case,* 331 Mass. at 523.

Although the parties agreed to "submit" the doctors' reports to the single member, the insurer does not claim that the claimant was precluded from asking the board to strike them. The usual rule is that the decision of the reviewing board "superseded and made unimportant that of the single member." *Id.* at 522. The board denied, without giving its reasons, the claimant's motion to strike the disputed medical reports. On the record as it stood, the claimant was entitled to have the decision of the single member reviewed "as if those reports were not parts of the record or, in the alternative, to recommit the case to the single member for further proceedings." *Russo's Case,* 1 Mass. App. Ct. 206, 207-208 (1973). In sum, the board should have allowed the employee's motion to strike the opin-

ions of the insurer's experts. See *Charron's Case,* 331 Mass. at 523; *Russo's Case,* 1 Mass. App. Ct. at 207-208.

3. *Remedy.* The incident at bar occurred in 1973, almost thirteen years ago, and it is unlikely that the material in the hospital report can now be substantiated. Moreover, the findings of the single member (adopted by the board) as to what the employee was doing at the time of the incident (i.e., "performing his regular work-related duties" as a general laborer "removing gravel from a truck, which he would put into a wheelbarrow and deposit the gravel into a trench") seem somewhat inconsistent with the hospital report. The findings would have been sufficient, in light of G. L. c. 152, § 7A, to make out a prima facie case for recovery.

On the record as it stood, the opinions of the insurer's physicians should have been struck. The decision of the single member (adopted by the board) is also tainted by the error of law as to § 7A, an error which may have misled the insurer in presenting its case before the single member. In these circumstances we think the case should be recommitted to the Industrial Accident Board, see *Assessors of Boston* v. *Diab,* 396 Mass. 560, 563 (1986), to determine whether (a) to strike the medical records and make an appropriate award to the claimant without further medical evidence or (b) to hear additional evidence (by the board or the single member) on such issues as the board in its discretion determines including the issue whether the medical opinions would be altered if the history contained in the hospital report were deleted and the facts considered to be those found by the single member.

The judgment is reversed, and the matter is to be remanded to the reviewing board for further proceedings consistent with this opinion.

*So ordered.*