MARGE DUNTON REIDA vs. CAPE COD HOSPITAL & others.[1]

No. 92-P-1833.

Barnstable. March 23, 1994. - May 26, 1994.

Present: ARMSTRONG, JACOBS, & PORADA, JJ.

*Mental Health. Agency*, What constitutes, Independent contractor. *Evidence*, Expert opinion, Relevancy and materiality. *Practice, Civil*, Amendment.

In an action seeking damages for a physician's having failed to physically examine the plaintiff before applying for her involuntary commitment to a psychiatric facility, summary judgment was correctly granted in favor of the defendant hospital where the record established that the defendant physician was not an employee or agent of the hospital or subject to its control or supervision in doing his work. [554-555]

At the trial of an action seeking damages for a physician's having applied for the plaintiff's involuntary commitment to a psychiatric facility under G. L. c. 123, § 12(*a*), without first having physically examined her, the judge correctly instructed the jury with respect to the physician's duties under the statute in examining a patient before authorizing such application for hospitalization. [555-556]

At the trial of an action for seeking damages for a physician's having applied for the plaintiff's involuntary commitment to a psychiatric facility under G. L. c. 123, § 12(*a*), without first having physically examined her, the judge correctly excluded as irrelevant certain expert testimony proffered by the plaintiff. [556]

In a civil action the judge did not abuse his discretion in denying the plaintiff's motion to add parties defendant four years after the action had been filed and six years after the event that gave rise to the suit, and after discovery was substantially completed, where the identities and roles of the new parties must have been known to the plaintiff from the outset. [556-557]

---

[1]Kevin Tracey, M.D., and Gail Greene. The appellant, having made no argument concerning the defendant Greene, has waived her appeal as to that party. Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975).

CIVIL ACTION commenced in the Superior Court Department on July 11, 1986.

A motion to amend the complaint was heard by *Elizabeth J. Dolan*, J.; a motion for summary judgment was heard by *Gerald F. O'Neill, Jr.*, J.; and the case was tried before *James J. Nixon*, J.

*Esther J. Horwich* for the plaintiff.

*Carol A. Griffin* for the defendants.

ARMSTRONG, J. The plaintiff sued Cape Cod Hospital and its emergency room physician for their role in causing her involuntary commitment to a psychiatric facility. Her complaint is that the physician failed to examine her, as G. L. c. 123, § 12(*a*), requires, before he authorized her restraint and applied for her temporary hospitalization at the facility. Compare *Leininger* v. *Franklin Med. Center*, 404 Mass. 245, 248 (1989). Prior to trial, the judge allowed Cape Cod Hospital's motion for summary judgment. On the single count against the physician that went to the jury, the judge instructed, in part, that § 12(*a*) "does not require hands-on physical or psychiatric assessment to satisfy that word examination. If he looked at [the plaintiff] and together with the other information available, was satisfied that [the plaintiff] requir[ed] an assessment by a psychiatric facility, . . . you could consider that that satisfies the [requirement] of examination. But that's your determination to make." The jury determined by special verdict that the physician did not violate the duty imposed by the statute, and the plaintiff appealed from the ensuing judgment.

1. *Summary judgment.* There was no error in the allowance of summary judgment for Cape Cod Hospital. Affidavits established that the physician was not an employee or agent of the hospital or subject to its control or supervision in doing his work; rather, he was part of an incorporated emergency room physicians' group which provided service to the hospital as an independent contractor. See *Kapp* v. *Ballantine*, 380 Mass. 186, 195 (1980); *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 159 (1982); *Kelley* v.

*Rossi,* 395 Mass. 659, 662 (1985); *Chase v. Independent Practice Assn., Inc.,* 31 Mass. App. Ct. 661, 665 (1991).

2. *Jury instructions.* The quoted language set out above was not tantamount to instructing the jury that the physician, contrary to the statute, was not required to examine the plaintiff. In context, the judge was instructing that G. L. c. 123, § 12(*a*), does not require as matter of law that the physician conduct a physical examination involving either manual and laboratory testing or a psychiatric assessment; that his observation of the patient, taken in conjunction with medical records and other information supplied to him, could be found by the jury to have satisfied his statutory duty to examine under § 12(*a*). In this case, the physician reviewed Cape Cod Hospital records which showed that the plaintiff had been admitted two months earlier, having overdosed herself with medication and slashed her wrists in a suicide attempt; he was advised by the plaintiff's primary at-home caretaker (the plaintiff's legal guardian, her physician-son, had arranged for twenty-four hour supervision by nurse's aides) that the plaintiff had deteriorated in recent days (that morning she had disobeyed the aide on duty, walking to a store alone, having on a previous occasion, when alone in a store, stolen razor blades); and that she (the primary caretaker) had arranged for a psychiatric placement and for transportation by the Yarmouth police. The physician testified that by observation he could and did conclude that the plaintiff was in pain, and suffering from major depression.

In these circumstances we think that the judge did not err in instructing the jury that observation alone, coupled with the background information, could be found by them to constitute the examination required by the statute. The examination required by § 12(*a*) may be performed by *any* licensed physician,[2] not necessarily one who is qualified to

---

[2]Statute 1982, c. 614, broadened G. L. c. 123, § 12(*a*), so as to enable "a qualified psychologist licensed pursuant to [G. L. c. 112, §§ 118-129]," as well as a licensed physician, to authorize restraints and apply for involuntary psychiatric hospitalization. Since the events in this case, § 12(*a*) has been further broadened to permit the same function to be performed by a "qualified psychiatric nurse mental health clinical specialist author-

perform psychiatric assessments. The role of a licensed physician applying for a patient's admission is limited; he authorizes restraint of the patient and signs an application for psychiatric hospitalization, based on his "ha[ving] reason to believe that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness." G. L. c. 123, § 12(*a*), as inserted by St. 1970, c. 888, § 4. Doubtless the "examination" requirement of § 12(*a*) is meant to ensure that the physician will not act purely on what he is told but will actually see how the patient presents. Whether something beyond observation is required to convince the applying physician that the patient may need psychiatric hospitalization is a matter of professional judgment; nothing in the statute mandates that such a judgment is invalid without prior physical or psychological testing that the applying physician may be unqualified to perform. If, as in this case, the applying physician is not qualified under Department of Mental Health regulations to admit a patient to a mental health facility, section 12(*b*) provides for a qualified psychiatric examination of the patient at the receiving facility prior to admission. That examination must be conducted by a physician specifically designated by the Department of Mental Health as having the authority to admit a patient to a psychiatric hospital. The admitting physician has the role of determining whether, in fact, a failure to hospitalize *would* create a likelihood of serious harm, in contrast to the applying physician, whose function is only to determine whether there is reason to believe that such may be the case.

3. *Other issues.* There was no error in excluding the testimony of the plaintiff's expert, a psychiatrist, that, in his opinion, the plaintiff did not need to be hospitalized on the relevant date; that opinion, whatever relevance it might have to the diagnosis of the *admitting* physician, had no relevance to the limited function of the *applying* physician, which was only to authorize the determinative examination. Nor did the judge abuse his discretion in denying the plaintiff's motion to

---

ized to practice as such under regulations promulgated pursuant to [G. L. c. 112, § 80B]." See St. 1989, c. 304, § 2.

add additional parties defendant (the psychiatric hospital and the admitting physician) four years after the action had been filed and six years after the events that gave rise to suit. Compare *United States Leasing Corp.* v. *Chicopee,* 402 Mass. 228, 233 (1988); *Barbosa* v. *Hopper Feeds, Inc.,* 404 Mass. 610, 622 (1989); *Mathis* v. *Massachusetts Elec. Co.,* 409 Mass. 256, 264-265 (1991); *Parkman Equip. Corp.* v. *S.A.S. Equip. Co.,* 14 Mass. App. Ct. 938, 940 (1982). No reason was given for the delay in joining the new parties after discovery was substantially completed. The judge, acting in his discretion, could properly deny the motion, particularly where the identities and roles of the new parties must have been known to the plaintiff from the outset.

*Judgment affirmed.*