Barbara Supeno *vs.* Equity Office Properties Manage-
ment, LLC, & others.[1]

No. 06-P-1357.

Middlesex. May 11, 2007. - October 11, 2007.

Present: Doerfer, Mills, & Graham, JJ.

*Collateral Estoppel. Administrative Law,* Preclusive effect of decision. *Work-
ers' Compensation Act,* Decision of Industrial Accident Reviewing Board.

Where an employee did not prevail against her employer in an administrative
action seeking worker's compensation benefits on account of the employee's
alleged exposure to toxins and fumes in the building where she worked, a
Superior Court judge, in the employee's subsequent tort action against the
management company of the building, properly granted summary judg-
ment in favor of the management company, in that the doctrine of defensive
collateral estoppel barred the employee from relitigating the issue of a
causal connection between her condition and the workplace environment,
given the earlier administrative finding that there was no probative evidence
of causation. [473-476]

Civil action commenced in the Superior Court Department on
February 5, 2003.

The case was heard by *S. Jane Haggerty,* J., on a motion for
summary judgment.

*Deirdre H. Robbins* for the plaintiff.

*William A. Schneider* for Equity Office Management, LLC, &
another.

*Michael B. Barkley,* for Performance Piping, Inc., was present
but did not argue.

*Angela L. Carr,* for Chapman Construction Corp., was present
but did not argue.

---

[1]MA-New England Executive Park, LLC (MA-New England); Chapman
Construction Corp. (Chapman); and Performance Piping, Inc. (Performance)
(collectively, defendants). Equity Office Properties Management, LLC, indicates
in its brief that its official name is EOP Operating Limited Partnership. It will
be referred to as Equity throughout the remainder of this opinion.

GRAHAM, J. Plaintiff Barbara Supeno brought a claim under G. L. c. 152, § 1(7A), for workers' compensation benefits against her employer, Elron Software, Inc. (Elron), for whom she began working on January 31, 2000, claiming that her condition of idiopathic environmental intolerance (IEI) was caused by exposure to "harmful toxins and fumes" in the workplace.[2] An administrative law judge of the Department of Industrial Accidents (DIA) denied her claim, concluding on the evidence before him that Supeno did not meet her burden of showing that her medical condition was caused by an injury in the workplace or arose out of or in the course of her employment at Elron. The reviewing board summarily affirmed, and by a judgment dated August 25, 2005, a single justice of this court also affirmed. Supeno did not appeal from the judgment of the single justice.

While proceedings before the DIA were pending, Supeno commenced the present Superior Court action in tort against Equity, the management company for the building in which Elron was located, alleging that she was harmed by exposure to "noxious, toxic and damaging chemical fumes, molds, and other substances" during renovation of Elron's building.[3]

A Superior Court judge granted summary judgment to the defendants, concluding that Supeno was collaterally estopped from raising the issue of a causal connection between her injury and the workplace environment on the basis of the DIA decision, as affirmed. On appeal, Supeno alleges that the motion judge erred in finding an identity of issues for purposes of collateral estoppel, arguing that the legal standard of causation differs in tort law versus G. L. c. 152, § 1(7A), claims.

*Background.* Supeno was thirty-nine years old at the time of

---

[2]Various incidents of exposure identified in the decision of the administrative law judge included Supeno smelling paint fumes, burning metal with black smoke coming through vents, mold, and an ammonia-like fume in her work area. After these incidents, Supeno stated she felt various symptoms, including her face turning red, swollen throat, dizziness, burning eyes and nose, wheezing, developing a rash, and feeling "heavy-chested" and light-headed. Although Supeno reported the incidents to her supervisor, she either completed her full day of work or returned to work the following day.

[3]Subsequently, Supeno was allowed to amend her complaint to add similar claims against MA-New England, owner of the building in which Elron was located, and against Performance and Chapman, both of whom were alleged to have performed some of the renovations.

her Superior Court complaint. She has a long history of seasonal and environmental allergies, as well as asthma. Her medical problems date back to at least 1992, when a medication called Ciprofloxacin (Cipro) "triggered a rapid escalation of allergies . . . [and] multiple chemical sensitivities." She had numerous emergency rooms visits for these medical issues, and was diagnosed in 1999 with "hypervigilant state, multiple chemical sensitivities, asthma, food/inhalant allergies, vision problems, irritable bowel syndrome, muscle spasm, stress, [and] hypochlorhydrine food allergies." Also in 1999, Supeno complained of a weakening immune system and an increased sensitivity to many substances since her 1992 episode after taking Cipro.

Supeno began working for Elron on January 31, 2000. She alleged that "[o]n at least five separate occasions between February 7, 2000 and March 2, 2000 [she] was exposed to noxious, toxic and damaging chemical fumes, molds, and other substances." Supeno claimed that she suffered various allergic reactions due to these exposures, and she did not return to work for Elron after the last alleged exposure. Furthermore, she asserted that she was unable to control her reactions with medication, causing her not to seek employment elsewhere and to greatly curb her recreational activities.

As a result of these medical issues, Supeno filed a claim for workers' compensation benefits. On October 26, 2000, the claim came before an administrative law judge at the DIA. Subsequent to a conference pursuant to G. L. c. 152, § 10A, after which the claim was denied, the matter was reassigned for a hearing de novo.

In September of 2003, the administrative law judge dismissed Supeno's workers' compensation claim. In his written decision, he found not only that the incidents at Elron were "not a major cause of either her medical impairments or her ongoing disability," but also that Supeno's vulnerability to "any kind of respiratory irritant . . . preexisted her employment at Elron, and that, although she did have allergic reactive episodes during her employment at Elron, there is *no* probative evidence that these exposures worsened her condition, or are the cause of her present disability" (emphasis supplied).

*Discussion.* This case is before us on review of a grant of summary judgment; therefore, we view the material evidence in a light most favorable to the nonmoving party. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The moving party may satisfy its burden by demonstrating the absence of triable issues, *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989), or by establishing that the plaintiff will not be able to prove an essential element of its case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

Essentially, under the doctrine of collateral estoppel, an issue which was litigated fully in an earlier action cannot be relitigated. See *Martin* v. *Ring*, 401 Mass. 59, 61 (1987) ("The purpose of the doctrine [of collateral estoppel] is to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments"). The doctrine of collateral estoppel (or issue preclusion) provides that "when an issue has been 'actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim.' " *Jarosz* v. *Palmer*, 436 Mass. 526, 530-531 (2002), quoting from *Cousineau* v. *Laramee*, 388 Mass. 859, 863 n.4 (1983).

In some circumstances, mutuality of parties is not required. "A nonparty may use collateral estoppel defensively against a party to the original action who had a full and fair opportunity to litigate the issues in question. So long as there is an identity of issues, a finding adverse to the original party against whom it is being asserted, and a 'judgment on the merits by a court of competent jurisdiction,' collateral estoppel may apply." *Martin* v. *Ring, supra* (citations omitted).

Therefore, a party seeking to preclude an action on the basis of issue preclusion must persuade the court that "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; . . . (3) the issue in the prior adjudication was identical to the issue in the current

adjudication[4]; . . . [and] [4] the issue decided in the prior adjudication must have been essential to the earlier judgment." *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134-135 (1998). Supeno concedes that the defendants can establish elements (1), (2), and (4). Therefore, the sole dispute before this court is whether there is an identity of issues between the DIA proceeding and Supeno's negligence action.

The workers' compensation statute applicable to Supeno's claim provides that when an individual's workplace injuries combine with a pre-existing condition, the worker's "resultant condition shall be compensable only to the extent . . . [the workplace injury] remains a *major* but not necessarily predominant cause of disability" (emphasis supplied). G. L. c. 152, § 1(7A).[5] In tort law, the test for causation is whether the "defendant's negligence was a *substantial factor* in bringing about injury and harm" (emphasis supplied). *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 385 (1980).

Supeno argues that the administrative law judge (ALJ) decided only the issue whether the evidence that she presented met the major cause standard of G. L. c. 152, and did not, and could not, determine whether the tort standard had been met. Therefore, Supeno contends, the lack of identity of issues concerning causation precludes the application of collateral estoppel to her in the tort case.

The central issue in this case, and the key issue in the workers' compensation case, was the causation of Supeno's current medical status. The causation issue was fully litigated at a

---

[4]In some circumstances, "even if there is a lack of total identity between the issues involved in two adjudications, the overlap may be so substantial that preclusion is plainly appropriate." *Commissioner of the Dept. of Employment & Training* v. *Dugan*, 428 Mass. 138, 143 (1998).

[5]General Laws c. 152, § 1(7A), as amended by St. 1991, c. 398, § 14, part of the definitional section of the Workers' Compensation Act, provides in relevant part:

> "If a compensable injury or disease combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a *major but not necessarily predominant cause* of disability or need for treatment" (emphasis supplied).

multiple-day hearing and was essential to the finding of the ALJ, who considered numerous hospital records, witnesses' testimony, and physicians' depositions.[6] In a thorough eighteen-page decision, the ALJ recounted the evidence and made findings that explained the rationale for his decision. It is clear that the ALJ found testimony given by Supeno[7] and her life partner, who testified on her behalf,[8] not persuasive or credible. The ALJ discussed at great length Supeno's long-standing history of allergic reactions as evidenced by the medical reports of three doctors who treated or consulted with Supeno prior to her employment at Elron. Considering such medical evidence, the ALJ found Supeno had multiple pre-existing medical conditions, including asthma, environmental allergies (including latex), and IEI, and that her medical condition prior to her employment had been worsening since June, 1999.

Recounting the postemployment medical evidence, the ALJ explained his decision not to adopt the opinions of some of the medical experts. For example, the ALJ expressly declined to adopt Dr. Christiani's opinion on causal relationship "because it is based on an incomplete history, which does not contain material and relevant facts; it is based on a temporal relationship of the employee's need for treatment, which again does not accurately reflect the treatment she received prior to her employment at Elron." See *Narducci* v. *Contributory Retirement Appeal Bd.*, 68 Mass. App. Ct. 127, 135-136 (2007) ("not improper for the [administrative magistrate] to consider the medical uncertainties presented by . . . evidence in evaluating whether

[6]The summary judgment record shows that the ALJ reviewed twenty-seven exhibits that included medical records and reports from various doctors as well as the deposition testimony of Dr. William Patterson, a board impartial physician, and Dr. David Christiani.

[7]The ALJ noted his personal observations of Supeno and also stated that "the reliability of her testimony is challenged by both what is reported and what is omitted in her own medical evidence."

[8]The ALJ found that the testimony of the life partner, who was also a nurse, "was undermined during cross-examination" and "was intended to present the employee's medical and functional status in its most favorable light, while minimizing the medical realities identified by numerous physicians, with which she [was] familiar . . . [and] that her testimony was not persuasive concerning the employee's level of functioning and medical impairment prior to her employment at Elron."

the plaintiff had carried her burden"). The ALJ agreed with the medical opinion of Dr. Patterson, finding that there was no over-all change in Supeno's condition that developed as a consequence of her employment at Elron, based on the severity of her condition prior to Elron, her minimizing of her symptoms in giving a history, and the absence of objective evidence of her exposures at Elron. The ALJ further adopted the opinion of two other doctors that there was no objective evidence that Supeno's condition was changed as a result of the Elron exposures and therefore discounted the opinion of Supeno's primary doctor, who opined that her condition related to "unknown volatile compounds" and "air quality problems," since such opinion was based on assumptions, rather than an objective or scientific basis. See *Patterson* v. *Liberty Mut. Ins. Co.*, 48 Mass. App. Ct. 586, 592-595 (2000). The ALJ further found that the Elron exposures were "not a major cause of either [Supeno's] medical impairments or her ongoing disability," and made subsidiary findings that there was "no probative evidence" presented to indicate *any* causal relationship between the exposures and Supeno's current medical condition.

A review of the record thus reveals that the evidence rationally permitted the ALJ to reject the claim of causation. See *Narducci* v. *Contributory Retirement Appeal Bd.*, *supra* at 137 ("All that is required is that the record contain facts which make rejection of such expert evidence reasonable").

Moreover, considering the finding that there was "no" probative evidence of causation, it is not relevant for our purposes and we decline to address whether Supeno had the burden of proving a different standard of causation in the tort action as compared to the workers' compensation claim. We observe that if there was *no* causal relation established between the alleged workplace injury and Supeno's ongoing condition, then she could not establish that that injury was either a "major cause" or a "substantial factor" of her medical condition. Accordingly, the motion judge applied properly the doctrine of defensive collateral estoppel.

*Judgment affirmed.*