## Michael Haslam's Case.

Suffolk. December 3, 2007. - April 8, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Workers' Compensation Act,* Appeal, Coverage, Injuries to which act applies, Street risk.

Injuries sustained by an employee in a one-car accident when he fell asleep while driving home after working for twenty-seven hours without sleep were not compensable under the workers' compensation act, G. L. c. 152, § 26, where the employer did not require the employee to work beyond his regular, far shorter, shift [106-110], and where the plaintiff failed to demonstrate that he was injured during a special errand for his employer that was distinct from his regular commute to and from work [111-112].

Appeal from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Shawn F. Mullen* for the insurer.

*Paul M. Moretti* for the employee.

Marshall, C.J. We transferred this case from the Appeals Court on our own motion to decide whether injuries sustained by Michael Haslam (employee) in a one-car accident while he was driving home after working for twenty-seven hours without sleep are compensable under the workers' compensation act, G. L. c. 152, § 26.[1] In *Chernick's Case,* 286 Mass. 168, 172 (1934), this court held that compensation for an injury arising out of and in the course of employment "does not extend to cover employees going to and coming from their work," col-

---

[1]General Laws c. 152, § 26, provides, in relevant part: "[A]n employee who . . . receives a personal injury arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer, and whether within or without the commonwealth, . . . shall be paid compensation."

loquially referred to as the "going and coming" rule. See *Worm-stead* v. *Town Manager of Saugus*, 366 Mass. 659, 666 (1975). In this case, an administrative judge of the Department of Industrial Accidents concluded that, while the accident occurred during the employee's commute home, the employee's injuries were compensable because the employee's "utter exhaustion due to work-caused sleep deprivation" resulted in the accident. A divided reviewing board affirmed. The insurer, National Union Fire Insurance Company (insurer), appealed. We conclude that the employee's injuries are not compensable because the employer did not require the employee to work beyond his regular, far shorter, shift. We reverse the decision of the reviewing board.

1. *Background.* We summarize the pertinent evidence. See *Papanastassiou's Case*, 362 Mass. 91, 92 (1972). The employee began working at 5 A.M. on August 3, 2001, the day before the accident. He was a foreman who supervised a crew of carpenters building forms for road supports for the "Big Dig" central artery project in Boston.[2] That day the project was delayed for various reasons, and the pouring of concrete into the forms did not begin until 1 A.M., twenty hours after the employee had begun his shift. The employee testified that the day shift, for which he had been scheduled, ended at 3:30 P.M., and that he was not scheduled to work overnight. He remained on the job, he said, because "a carpenter has to be there while the concrete's being poured, to the finish. . . . I had to be there. There was nobody else there to finish what I was doing until about 8 [A.M.]." As a result, he said, "I sucked it up and drove on because if I didn't finish it I probably wouldn't have had a job."

The construction crew supervisor on duty that night, David Arruda, "corroborated" the employee, in the administrative judge's words, that a carpenter was required to be present during concrete pours. The supervisor testified, however, that if he was told that "somebody was tired, you know, there's a slew of people . . . a few different people from the carpenters' end if there is a problem that [the supervisors] can fall back on, so I

---

[2]There was evidence, pointed to by the reviewing board, that the employee's duties required him to "get[] down in the hole" with his crew, and included crawling and heavy lifting.

could make the phone calls to get more personnel out there."[3] Arruda testified that the employee did not ask for assistance during the night. When the employee was asked at the hearing, "[D]id anybody tell you had to stay that length of time?" he answered unequivocally, "No."[4] The administrative judge found that, under the employee's union's contract with his employer, the employee could not be required to work overtime.

It is undisputed that, before he headed home on August 4, the employee had worked for approximately twenty-seven hours without sleep.[5] When he left the worksite at 8:15 A.M., he felt, in his words, "totally exhausted." He fell asleep after driving for thirty minutes, crashed into a utility pole, and was injured.[6]

On October 16, 2001, the employee filed a claim for benefits for a compensable injury. On January 14, 2002, the claim went before an administrative judge for a conference pursuant to G. L. c. 152, § 10A (1).[7] The administrative judge ruled that the injury was compensable and issued an order requiring the insurer

---

[3]This testimony of the supervisor, David Arruda, was referred to in the opinion by the dissenting administrative law judge of the reviewing board. The employee correctly points out that the administrative judge made no findings concerning this evidence, but the supervisor's testimony is unrebutted and not challenged. We are not persuaded by the employee's claims that this was "conflicting testimony" that the administrative judge resolved in favor of the employee. The supervisor's testimony did not conflict with the employee's testimony, referred to by the administrative judge, that he (the employee) subjectively believed that he might lose his job if he left work before the pour was complete. The statements may credibly coexist.

The dissenting member of the reviewing board also pointed to Arruda's testimony describing the protocol for supervising a worker remaining beyond his shift. Arruda explained that when a worker became fatigued, the worker's foreman would inform Arruda, who would give the worker the option of staying on the job or going home. Here too the administrative judge made no finding, and here too that evidence is unrebutted.

[4]The administrative judge made no express finding concerning this evidence.

[5]There was evidence that the day before, August 2, the employee had worked for fifteen hours, returning to work on August 3, at 5 A.M., after only three and one-half hours of sleep.

[6]The employee sustained fractures to two fingers of his left hand and some of his ribs, and injuries to his right ankle and foot. He had two surgeries on his hand, in which screws were inserted into his fingers, and one surgery on his ankle.

[7]General Laws c. 152, § 10A (1), provides, in relevant part: "The administrative judge [to whom a claim for compensation is assigned] shall require the parties to appear before him for a conference within twenty-eight days of

to pay benefits to the employee, including temporary total incapacity benefits pursuant to G. L. c. 152, § 34, partial incapacity benefits pursuant to G. L. c. 152, § 35, and medical benefits pursuant to G. L. c. 152, § 30. Both parties sought a hearing pursuant to G. L. c. 152, § 10A (3).[8] At the hearing on September 24, 2002, before the same administrative judge, the employee challenged the amount and scope of the award.[9] The insurer challenged the rulings as to liability, incapacity, entitlement to medical benefits, causal relationship, and average weekly wage, and sought recoupment of monies paid pursuant to the conference order.

In his decision of March 8, 2004, the administrative judge concluded that the employee's injuries were compensable[10] because "the physical state that caused the accident arose directly out of and had presented itself while [the employee] was still on the job," and that his "utter exhaustion, due to work-caused

receipt of the case by the division of dispute resolution."

[8]General Laws c. 152, § 10A (3), provides, in relevant part: "Any party aggrieved by an order of an administrative judge shall have fourteen days from the filing date of such order within which to file an appeal for a hearing . . . ."

[9]The employee sought G. L. c. 152, § 34, temporary total incapacity benefits from August 5, 2001, until May 20, 2002. He sought partial incapacity benefits pursuant to G. L. c. 152, § 35, thereafter, as well as the inclusion of certain fringe benefits in the calculation of his average weekly wage, asserting that he was entitled to "prevailing" wages pursuant to G. L. c. 149, §§ 26 and 27. Those statutes require the Commissioner of Labor and Industries to issue prevailing wage schedules for certain categories of employees working on, inter alia, construction and other types of public projects.

[10]The administrative judge ordered the insurer to pay benefits pursuant to G. L. c. 152, §§ 34 and 35, to the employee for the period requested by the employee, see note 9, *supra*, based on an average weekly wage of $1,399.50. The average weekly wage did not include fringe benefits because, the administrative judge concluded, the employee failed to meet his burden to prove the promulgation of a prevailing wage applicable to his position. The administrative judge retained jurisdiction of the case for sixty days to allow the employee "to introduce additional evidence as to whether a prevailing wage was formally set for the position in which he worked at the time of his injury."

On April 9, 2004, the administrative judge filed an amendment to his decision and ordered the insurer to pay benefits as ordered in his March 8 decision; he did not retain further jurisdiction of the case, but in the interests of "justice" and "economy" reserved for the employee the right to raise a new claim as to the amount of the average weekly wage.

sleep deprivation, clearly arose out of and in the course of his employment."[11] In his subsidiary findings of fact, he found that the employee continued working because, in the administrative judge's words, the employee "wanted to get out of the overtime," but was "sucking it up" because "the job had to be done and because he felt there would be repercussions up to the possible loss of his job if the work was not completed on schedule." The administrative judge made no subsidiary (or other) findings concerning the supervisor's testimony that he could have brought other employees onto the night shift, and that the employee did not ask for assistance.[12] See note 3, *supra*. He made no express finding whether the employee was compelled to work beyond his regular shift.[13]

The insurer appealed from the decision to the reviewing board pursuant to G. L. c. 152, § 11C.[14] A divided panel of the reviewing board affirmed the decision.[15] Two administrative law judges agreed, for different reasons, that the employee's injuries were compensable. One concluded that the employee's exhaustion arose out of and in the course of his employment because the employee was " 'impelled by his employment' to continue working until the concrete pour was finished, 27 hours after his shift began."[16] She noted that the employee was "not ordered to work overtime," but reasoned that his injuries were compen-

---

[11]The administrative judge found that "[w]ith such extreme circumstances as these, and with such a clear, direct connection between the extreme circumstances and the ultimate accident, this incident is different and distinct from those situations appropriately within the going and coming rule."

[12]In his subsidiary findings the administrative judge found that "[the employee] indicated that it was required that at least a rudimentary carpentry crew, including a foreman, be there through the pour. *Though he allowed that overtime was not compulsory*, the night crew had been laid off and there was no relief" (emphasis added).

[13]Notably, the employee, in the words of the dissenting administrative law judge, "worked copious amounts of overtime in most of the ten weeks preceding his injury. In at least two of those weeks, his earnings exceeded his pay for the week [of the accident]."

[14]General Laws c. 152, § 11C, provides, in relevant part: "Any party aggrieved by a decision of an administrative judge after a hearing held pursuant to section eleven shall have thirty days from the filing date of such decision within which to file an appeal from said decision to the reviewing board."

[15]The insurer also had appealed from the April 9, 2004, amendment to the decision, which the reviewing board affirmed. See note 10, *supra*.

[16]In *Caron's Case*, 351 Mass. 406, 409 (1966), this court held that the go-

sable because "the employee felt obligated to stay until the [concrete] pour was completed." Citing *Hicks's Case*, 62 Mass. App. Ct. 755, 764 (2005), she concluded that the supervisor had "impliedly authorized" the employee's overtime by allowing him to continue to work, by paying him for the overtime, and by "not providing any relief" to the employee. See note 20, *infra*. A second member of the reviewing board, citing *Zerofski's Case*, 385 Mass. 590, 594 (1982), concluded that the injuries arose out of and in the course of employment because there was a "direct cause between the employee's work, his diminished capacity to safely operate his automobile, and his resulting injuries and disability." The dissenting member of the reviewing board reasoned that the injuries were not compensable because they did not arise out of and in the course of employment where there was no evidence that the employee was "required or requested" to remain at work beyond the usual end of his shift and because "work-related fatigue is not the kind of 'harm' which our courts have construed as either constituting, or giving rise to, a compensable injury."

2. *Standard of review.* Pursuant to G. L. c. 152, § 12 (2), we review a decision of the reviewing board under the standards of the Administrative Procedure Act, G. L. c. 30A, § 14 (7) (*a*)-(*d*), (*f*), and (*g*). We may set aside or modify the decision of the reviewing board if the decision is, among other things, "[b]ased on an error of law," "[m]ade upon unlawful procedure," or "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7) (*c*), (*d*), (*g*). See *Robinson's Case*, 416 Mass. 454, 455-457 (1993).

3. *Fatigue "arising out of and in the course of" employment.* The employee does not take issue with the "going and coming" rule, see L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 12.4 (3d ed. 2003) (Nason, Koziol, & Wall), but argues that where the medical evidence established "a clear causal link between the employment activity and the injury," the employee's injuries were "directly attributable to the

---

ing and coming rule did not bar recovery where an employee was injured while returning home from an off-site meeting because "it was the employment which impelled the employee to make the trip" from the off-site location and "the risk of the trip [was] a hazard of the employment."

workplace and arose out of the employment" and the "going and coming" rule does not apply in his case. Uncontradicted evidence before the administrative judge supported his finding that the employee fell asleep at the wheel as a result of working for twenty-seven hours without sleep. The insurer does not challenge that finding,[17] but argues that the employee's injuries are nevertheless not compensable because, among other reasons, the employee, injured while traveling home from work, was not required to stay beyond his scheduled shift: in the words of the insurer, the overtime "was not compelled, overtime was not mandatory, and [the employee] testified that he could have left at anytime." See 1 A. Larson, Workers' Compensation Law § 13.01[1] (2007) (workers' compensation not intended to protect against all perils of worker's journey between home and place of employment). We agree with the insurer.

The employee points to cases from other jurisdictions where injuries sustained during travel from work have been deemed "employment-related," and therefore compensable because the travel home was made more hazardous by an employer's "extraordinary demands" for overtime work by the employee.[18] *Van Devander* v. *Heller Elec. Co.*, 405 F.2d 1108, 1110 (D.C. Cir. 1968) (compensating employee pursuant to Federal Longshoremen's and Harbor Workers' Act, 44 Stat. 1424 [1927], as amended, 33 U.S.C. §§ 901-950 [1957], for injuries sustained when he fell asleep while driving home after being required to work twenty-six hours without sleep because hazard of journey arose out of and in course of "extraordinary demands of employment"). See *Hed* v. *Brockway Glass Co.*, 309 Minn. 73,

---

[17]The administrative judge permitted the parties to submit medical evidence concerning, inter alia, whether fatigue from the job was related to the accident. The employee's medical expert opined that, in the words of the administrative judge, "the employee's falling asleep at the wheel, and the resulting August 4, 2001, motor vehicle accident, were caused by an extended period of sleep deprivation related to [the employee's] extended work shift immediately prior to the accident." The insurer did not proffer any expert opinion on this point.

[18]These circumstances are sometimes considered as falling within the special errand exception to the "going and coming" rule, discussed *infra*. See 1 A. Larson, Workers' Compensation Law § 14.05[4], at 14-12 (2007) ("It has sometimes been argued that an employee who works beyond regular hours at the request of the employer comes within the special errand rule while making the regular trip homeward").

76 (1976) (affirming compensation award to worker who fell asleep while driving home after being required to work longer hours as bricklayer than generally required); *Snowbarger* v. *Tri-County Elec. Coop.*, 793 S.W.2d 348, 350 (Mo. 1990) (affirming award of compensation to worker who fell asleep while driving home after being required to work "unusually long overtime hours" of manual labor, eighty-six hours in one hundred hour period). See also *Deland* v. *Hutchings Psychiatric Ctr.*, 203 A.D. 2d 776, 778 (N.Y. 1994) (recognizing "substantial body of authority from other States and the Federal courts" holding that fatigue-related injuries can be compensable in some circumstances, but remanding case for explanation why contrary precedent within jurisdiction was not followed). In all such cases, however, the employer had exposed its worker to the hazards of travel by requiring the employee to work unusually long hours. See, e.g., *Van Devander* v. *Heller Elec. Co.*, *supra*; *Hed* v. *Brockway Glass Co.*, *supra* at 76; *Snowbarger* v. *Tri-County Elec. Coop.*, *supra* at 349; *Deland* v. *Hutchings Psychiatric Ctr.*, *supra*. We need not decide in this case whether a requirement by an employer that an employee work overtime to such an extent that the employee's trip home is made substantially more hazardous can give rise to a compensable injury because here the employee has not met his burden to show that he was required by his employer to work beyond his usual shift. See *Sponatski's Case*, 220 Mass. 526, 527-528 (1915) (employee bears "burden of proving the essential facts necessary to establish a case warranting the payment of compensation" under act); *Patterson* v. *Liberty Mut. Ins. Co.*, 48 Mass. App. Ct. 586, 592 (2000) ("the employee has the burden of establishing, by a preponderance of the evidence, all the elements of her claim for workers' compensation benefits"). In the words of the reviewing board, the employee was "not ordered to work overtime."[19]

---

[19]Working beyond regular hours, even at the request of an employer, would not necessarily come within an exception to the "going and coming" rule. See 1 A. Larson, Workers' Compensation Law, *supra* at § 14.05[4], at 14-13 ("the special errand rule is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual"). The issue arises only "[w]hen the amount of overtime work becomes so great as to increase markedly the factor of fatigue, and when this factor contributes to the accident . . . ." *Id.* at § 14.05[4], at 14-14.

In fact, he was protected from such a requirement by his union contract.

As noted earlier, the employee testified that he stayed on the job beyond his regular shift because he "probably wouldn't have had a job" if he had left. Accepting the employee's testimony, the administrative judge made subsidiary findings that in essence found that it was the employee's subjective belief that kept him on the job beyond his scheduled shift. The employee testified that no one had ordered him to stay on the job. He also testified that four carpenters left at the end of their day shift on the day before the accident and had suffered no job repercussions. His supervisor, Arruda, testified that he (Arruda) could have called other carpenters to relieve the employee if the employee had asked for assistance. The employee's subjective belief of negative consequences that he anticipated would follow had he left at the end of his shift is not enough. To the extent the administrative judge reached his conclusion based on the employee's subjective perceptions or beliefs, he erred.[20] Cf. *Bengtson's Case*, 34 Mass. App. Ct. 239, 243-244 (1993) (denying compensation for worker's injury sustained during participation in employer-organized softball game, concluding "nature of an employee's participation in a recreational activity . . . must be weighed by an objective standard").[21] We are not aware of any decision in which a fatigue-caused injury while an employee was traveling home has been held compensable where

[20]That the employer may have benefited from the employee's work does not establish that the employer required the employee to remain on the job. The reviewing board relied on *Hicks's Case*, 62 Mass. App. Ct. 755, 762-768 (2005), where the Appeals Court affirmed an award to a medical technician injured by an influenza vaccination she received without charge from her employer, a hospital. The issue in that case was whether receipt of the vaccine was an incident of her employment. *Id*. at 763. The Appeals Court concluded that it was because the employer encouraged its workers to receive the vaccine, offered it on the premises, and received a benefit from the vaccination of its workers. *Id*. at 766-767. The question whether the employer "required" the worker to receive the vaccine was not addressed. *Id*. at 762-768.

[21]In *Bengtson's Case*, 34 Mass. App. Ct. 239, 243-244 (1993), the injured worker was not told that playing on the softball team was required, or that playing on the team would enhance his job opportunities. *Id*. at 243. No other worker was disciplined or disadvantaged for failing to play or rewarded for playing. *Id*. The Appeals Court, concluding that the worker's participation was voluntary when weighed by an objective standard, held that the administrative judge erred in giving weight to the worker's subjective perceptions. *Id*. at 244.

the employee was not required to work the extra hours. It is the "extraordinary demands of the claimant's employment" that may foreseeably expose the claimant to the risk of injury. 1 A. Larson, Workers' Compensation Law, *supra* at § 14.05[4], at 14-14.

There may be cases where fatigue gives rise to a compensable injury because an employer makes "extraordinary demands" on an employee and the employee is compelled to remain on the job. See, e.g., *Van Devander v. Heller Elec. Co., supra* at 1110. The dissenting member of the reviewing board panel commented that recognizing an exception to the "going and coming" rule in such circumstances would consign administrative judges "to the daunting task of drawing a bright line as to how many extra hours of work would be sufficient" to render fatigue-related injuries compensable. Necessarily administrative judges will have to determine whether an employer made an "extraordinary demand" based on the facts of each case, including but not limited to the worker's duties, the amount of overtime, the length of the worker's typical shift, and whether such facts warrant a conclusion that the overtime was so great "as to increase markedly the factor of fatigue" and that the fatigue from the overtime caused the accident. 1 A. Larson, Workers' Compensation Law, *supra* at § 14.05[4], at 14-14.[22] But this task is no more "daunting" for judges than the task of applying other exceptions to the "going and coming" rule. See *Caron's Case*, 351 Mass. 406, 409 (1966) (noting, with regard to special errand exception, that "each case must be decided on its own facts").

---

[22]For example, some employees regularly work twenty-four hour shifts. See *Local 2071, Int'l Ass'n of Firefighters v. Bellingham*, 67 Mass. App. Ct. 502, 505 (2006), *S.C.*, 450 Mass. 1011 (2007) (discussing testimony before joint labor-management committee in support of twenty-four hour shifts for fire fighters). A requirement that these workers remain for twenty-seven hours might not be "extraordinary." Compare *Hed v. Brockway Glass Co.*, 309 Minn. 73, 76-77 (1976) (affirming compensation award to bricklayer who fell asleep while driving home after being required to work nine-hour, fifteen-minute shift, which was longer than usual eight-hour shift, in unusually grueling conditions), with *Pappas v. Sports Servs., Inc.*, 68 Mich. App. 423, 432 (1976) (concluding that injuries sustained when cook fell asleep while driving after being required to work thirteen hours, which was five hours longer than his normal working day, and after attending work-sponsored party for two hours, were not compensable because "amount of overtime work was [not] so great as to increase substantially plaintiff's fatigue").

4. *Exceptions to the "going and coming" rule.* The employee argues that, even if the "going and coming" rule applies to him, his injuries are compensable because they fall within a recognized exception to that rule. See Nason, Koziol, & Wall, *supra* at § 12.4, at 379 (discussing exceptions to "going and coming" rule for off-premises injuries and noting that this court "has established a number of special circumstances that warrant compensation"). He points in particular to the "special errand" exception to the "going and coming" rule, which compensates an injury sustained while on a "mission which [was] necessitated by . . . employment." *Caron's Case, supra* at 409 (affirming compensation award to worker injured while driving home from evening business meeting at hotel he was required to attend).

When an employee makes a special trip, distinct from his regular commute to and from work, the employment relationship is not suspended and injuries sustained during the trip might be compensable. *Id.* at 408. See 1 A. Larson, Workers' Compensation Law, *supra* at § 14.05[1], at 14-5 (journey by employee "may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is *itself* sufficiently substantial to be viewed as an integral part of the service itself" [emphasis added]). In this case, however, when the employee was injured he was not engaged in any mission for his employer, but was driving home from work, an activity at the heart of the "going and coming" rule.

The Massachusetts cases on which the employee relies are distinguishable. For example, in *Rouse* v. *Greater Lynn Mental Health*, 16 Mass. Workers' Comp. Rep. 7, 8 (2002), aff'd, Appeals Court No. 2002-J-0048 (Mar. 3, 2004), a home health aide was compensated for an injury she sustained while walking to a patient's house to provide care during a snowstorm, when she was not scheduled to work. The reviewing board concluded the worker was on a "special trip," *id.* at 12, because she was traveling to work to "fulfill [the] employer's obligations to its clients," *id.* at 11, and was not "merely going to work as [she] normally and usually went to work." *Id.* at 12, quoting *Gwalt-*

*ney's Case*, 355 Mass. 333, 335 (1969). Similarly, in *Papanastassiou's Case*, 362 Mass. 91, 94 (1972), the dependents of a research scientist were compensated for injuries he sustained in a car accident while returning to work, outside of his usual hours, to complete an experiment. This court concluded the worker's injuries were compensable because his trip was implicitly authorized by his employer and was "in fulfilment of the [worker's] obligations to his employer." *Id.* at 94. Here, in contrast, while driving home, the employee was not fulfilling any obligation to or on behalf of his employer. He was not driving from a location that his employer required him to visit. Cf. *Caron's Case, supra* at 409.[23] He was driving home from his fixed place of work as he usually did. None of the exceptions to the going and coming rule applies to the circumstances of this case.

5. *Insurer's additional claims.* Because we conclude that the employee's injuries are not compensable, we need not address the insurer's additional arguments that the amended decision of the administrative judge was issued prior to any hearing or ruling on a pending motion filed by the insurer in violation of the insurer's rights to due process; that the administrative judge, without authority, retained jurisdiction over the prevailing wage issue; and that the administrative judge improperly reserved for the employee the right to raise a new claim as to his average weekly wage. See note 10, *supra.*

6. *Conclusion.* For the reasons stated above, the decision of the reviewing board is reversed. The case is remanded to the reviewing board for further proceedings consistent with this opinion.

*So ordered.*

---

[23]Cases from other jurisdictions on which the employee relies similarly hold that the special errand exception applies when an employee makes a trip in order to fulfil a special task for his employer. See, e.g., *Cavness* v. *Industrial Comm'n*, 74 Ariz. 27, 30 (1952) ("Undoubtedly the [employee] was en route to his usual place of employment but the trip was made in order to discharge a duty which [his employer] required and expected him to perform outside of and in addition to [his scheduled shift]"); *Dawson* v. *Oklahoma City Casket Co.*, 322 P.2d 642, 645 (Okla. 1958) (employee "was engaged in performing a special task for the benefit of his employer at the time he sustained his injury," task that was "other and different from" his typical duties).