NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-134                                          Appeals Court

JEFFREY COMEAU'S CASE.

No. 16-P-134.

Suffolk.     January 13, 2017. – May 8, 2017.

Present:  Grainger, Wolohojian, & Neyman, JJ.


Workers' Compensation Act, Interest.  Statute, Construction.
    Massachusetts Insurers Insolvency Fund.  Words, "Claim."


Appeal from a decision of the Industrial Accident Reviewing
Board.


Michael Brangwynne & John G. Neylon, Sr., for the employee.
Paul M. Moretti for Massachusetts Insurance Insolvency
Fund.
Margo A. Sutton for Wasau Insurance Company.


WOLOHOJIAN, J.  At issue is the meaning of the word "claim"

as it appears in G. L. c. 152, § 50, which requires that

interest be assessed on unpaid workers' compensation claims from

"the date of the receipt of the notice of the claim by the

department."  The reviewing board (board) of the Department of

Industrial Accidents (department) concluded that, in the

circumstances of this case, interest was to run from the date

the department received notice of the claim ultimately resulting in the order awarding benefits. The board rejected the employee's argument that interest should run instead from the filing date of an earlier, similar claim that had been terminated by agreement, pursuant to G. L. c. 152, § 19, prior to an adjudicated conclusion or an award of benefits. We affirm.

Background.[1] The case has an extensive history, most of which is not pertinent to this appeal and therefore need not be set out here. Of importance for our purposes is the following. The employee was injured in 1993 while working. Liberty Mutual Insurance Company (Liberty), as successor to Wausau Insurance Company (the insurer on the date of injury), accepted liability and paid the employee benefits for total incapacity pursuant to G. L. c. 152, § 34, until he returned to work. Liberty then paid the employee partial incapacity benefits pursuant to G. L. c. 152, § 35, benefits until March 10, 1995. The employee continued to work until October 2, 1995, when he suffered a second injury. The insurer for this second injury is now the Massachusetts Insurance Insolvency Fund (MIIF), which assumed

---

[1] Our recitation of the factual background is drawn from the decision of the board, certain aspects of which we cannot independently verify because the employee did not include the pertinent documents in the record appendix. For example, the appendix does not contain copies of any of the pre-2010 notices of claim.

the risk when Eastern Casualty Insurance Company, the insurer at the time of the second injury, became insolvent.[2] See G. L. c. 176D, § 5. On December 26, 1995, on the advice of his treating orthopedic physician, the employee stopped work and has not returned to work since.

The employee filed a claim for the second injury on April 1, 1996, and MIIF filed a denial of that claim on April 10, 1996.[3] Shortly thereafter, in May, 1996, Liberty filed a complaint for recoupment of almost $35,000 it had paid with respect to the first injury, alleging that the employee earned more than his average weekly wage while receiving the G. L. c. 152, § 35, benefits.

The employee then moved to join two claims against Liberty for the first injury, one for G. L. c. 152, § 34, benefits from January 2, 1996, and the other for G. L. c. 152, § 36, benefits. Liberty in turn moved to join MIIF as the insurer for the second injury. After a conference on the motions, the complaint for recoupment, and the employee's claims, an administrative judge denied Liberty's request for recoupment, allowed the motion to join MIIF, and denied the employee's claims, without

---

[2] As a convenient shorthand, we refer to both Wausau and Liberty as Liberty, and to Eastern and MIIF as MIIF.

[3] This notice of claim is not in the record appendix, see note 1, supra.

adjudicating MIIF's liability.  Liberty and the employee both appealed.

Over the next eleven years, although a number of hearings were scheduled, for reasons unknown they did not take place and the litigation languished.  On July 10, 2008, the parties entered into two agreements pursuant to G. L. c. 152, § 19; one agreement was between the employee and Wausau (now Liberty), and the other was between Wausau and Eastern (now MIIF).  In both agreements, Wausau agreed to withdraw without prejudice its appeal of the order denying recoupment.  In the agreement between the employee and Wausau, the employee agreed to withdraw his appeal of the conference order denying disability, reserving the right to raise a disability claim in the future.  The employee also stipulated to an overpayment by Wausau of almost $35,000.  That said, Wausau agreed not to pursue the employee for the overpayment unless the employee filed a "future claim for disability and that claim is resolved."  In the agreement between Wausau and Eastern, Eastern, without agreeing to liability and without prejudice, agreed that it had been joined to the litigation.  The § 19 agreements made no mention of interest or the date from which it would accrue in the event the employee ever received an order for unpaid benefits.  In short, the effect of the § 19 agreements, which were filed with the department and approved by the administrative judge, was to

terminate the pending proceedings without final adjudication and without prejudice in the event the employee again filed a claim.

The employee decided to do just that. He first filed claims again in 2008, but withdrew them in 2009. He refiled the claims in 2009, and then again withdrew them.[4] The employee's present claims were filed on January 25, 2010, when he filed an "Employee's Claim" Form 110 with the department, seeking §§ 34 and 35 benefits from April 1, 1996, to the present. Ultimately, through a series of rulings that are not at issue here, MIFF was ordered to pay the employee G. L. c. 152, § 34A, benefits for permanent and total incapacity from April 1, 1996 (the date on which the employee first filed a claim relating to the second injury) to the present and continuing.

Although the board affirmed the administrative judge's award of benefits from April 1, 1996, forward, the board assessed interest under G. L. c. 152, § 50, only from January 25, 2010, the filing date of the employee's most recent claim. On appeal, the employee argues that he should have been awarded interest from December 17, 1996 (the date the department

---

[4] The record appendix does not reveal the reason for this pattern of events, but the insurers contend that -- especially when viewed against the earlier denial of the employee's claim of disability -- it reflects forum shopping. We need not, and do not, determine what motivated the employee's actions. It is enough to note that he sought on multiple occasions to start the litigation afresh and then changed his mind, withdrawing his claims.

functionally received notice of his claim for the second injury).[5]

Discussion.  We must decide whether the board acted arbitrarily or capriciously, committed an abuse of its discretion, or made an error of law when it determined that the word "claim," as used in G. L. c 152, § 50, refers to the formal filing that invokes the adjudicatory process that ultimately leads to an award of benefits.  See G. L. c. 152, § 12(2); G. L. c. 30A, § 14(7).  See also Robinson's Case, 416 Mass. 454, 455-457 (1993); Haslam's Case, 451 Mass. 101, 106 (2008).  If the term is ambiguous, we defer to the board's interpretation of it; if the term is unambiguous, we do not.  See Kszepka's Case, 408 Mass. 843, 846-847 (1990); McCarty's Case, 445 Mass. 361, 367 (2005).

We begin with the language of the statute itself, which provides:

> "Whenever payments of any kind are not made within sixty days of being claimed by an employee, dependent or other party, and an order or decision requires that such payments be made, interest at the rate of ten percent per annum of all sums due from the date of the receipt of the notice of the claim by the department to the date of payment shall be required by such order or decision.  Whenever such sums

---

[5] It bears noting that the employee's position in this appeal appears to be different from the position he took before the board.  There, he did not challenge the administrative judge's interest award, which did not include interest for the period running from July 10, 2008 (the date of the § 19 agreements) to January 25, 2010 (the filing date of the current claim).

>     include weekly payments, interest shall be computed on each
>     unpaid weekly payment."

G. L. c. 152, § 50, as amended through St. 1991, c. 398, § 77. The statute imposes interest <u>if</u> an order or decision requires that unpaid benefits be paid; absent an order or decision awarding unpaid benefits, it does not apply.  In other words, an employee is entitled to interest under § 50 if an adjudicatory body awards unpaid benefits.  The employee is not entitled to interest simply because he filed a notice of claim; that act merely supplies the date from which interest will be calculated in the event an award of unpaid benefits is ultimately made in the employee's favor.  Thus, in this case, the employee was not entitled to interest under § 50 until the order awarding unpaid benefits on his January 25, 2010, notice of claim.  Before that point, although there had been several notices of claim, none had been adjudicated to resolution, let alone in the employee's favor.

What remains is the question whether interest is to be calculated from the date of the filing of the claim that led to the favorable award, or whether we should reach back to the date of an earlier, unadjudicated claim for that purpose.  In this regard, we note that the statute repeatedly uses the definite article "the" in the phrase "from <u>the</u> date of <u>the</u> receipt of <u>the</u> notice of <u>the</u> claim by <u>the</u> department" (emphasis added).  It

also uses the singular form of "notice" and "claim." It is clear that the language refers to a single notice of claim filed at a single point in time. The fact that the phrase appears in the same sentence as the requirement of an order awarding unpaid benefits leads to the natural conclusion that the notice of claim to which the statute refers is the one underlying the order awarding unpaid benefits. To uncouple the order from the claim underlying it would, in our view, run counter to the statute's language and structure. To the extent that there is any ambiguity in the language of the statute (and we do not suggest that there is), we would defer (as we noted above) to the board's interpretation of it.

Although not dispositive, we note that the board's interpretation and application of G. L. c. 152, § 50, in this case is consistent with its decisions in other cases. See Charles v. Boston Family Shelter, 11 Mass. Workers' Comp. Rep. 203, 205 (1997) (interest will not accrue retroactively where employee made no effort to pursue it during earlier claim); Prendergast v. Bay State Volkswagen, 18 Mass. Workers' Comp. Rep. 166, 170 (2004) ("[T]he plain language of § 50 . . . provides for payment of interest only from the date the department received the employee's claim, not from the date of the commencement of the underlying entitlement upon which interest is payable"); McEneaney v. Modern Continental Constr.,

Mass. Dept. of Industrial Accs. Reviewing Bd. No. 021002-01 (October 16, 2009) ("[W]e conclude the word 'claim' in the [§ 51A] is best interpreted in the general sense, meaning the vehicle by which a controversy is brought before the adjudicatory arm of the department [via form 110]").  Compare Keehnle v. Eagle Publishing Co., 9 Mass. Workers' Comp. Rep. 737, 739-740 (1995) (§ 50 interest can apply retroactively to earlier "mature" § 36 claim [unlike to awards under other sections of act] because § 36 is separate and distinct claim of different nature).

We recognize that "[t]he work[ers'] compensation act is to be construed broadly, rather than narrowly, in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design."  McCarty's Case, 445 Mass. at 364, quoting from Taylor's Case, 44 Mass. App. Ct. 495, 499 (1998).  In this connection, we are sensitive to the fact that the employee made his initial claim on April 1, 1996, and that he has been deprived of his benefits for many years.  Had he not terminated his 1996 claim, and had it resulted in a favorable award, he would have received interest from the date of the 1996 filing.  But, in fact, his 1996 claim for benefits was denied after conference, and he thereafter agreed to terminate it.  That claim never led to an order awarding unpaid benefits, and thus § 50 never applied to the 1996 claim.  In any

event, the language of the statute does not support the idea that interest should accrue from the filing date of an earlier unresolved claim.  A statute's "words must be given their plain and ordinary meaning according to the approved usage of language . . . [and] the language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it."  Ibid., quoting from Taylor's Case, supra.

For these reasons, we affirm the decision of the board.[6,7]

Decision of reviewing
board affirmed.

---

[6] MIIF has cross-appealed, arguing that the administrative judge impermissibly considered, and relied on, so-called "gap" medical evidence.  The argument was not made to the board, and the gap medical records were placed before the administrative judge by stipulation of the parties.  MIIF's argument is accordingly waived.  See Porter v. Treasurer & Collector of Taxes of Worcester, 385 Mass. 335, 338 n.5 (1982); Diamond v. Pappathanasi, 78 Mass. App. Ct. 77, 89 n.15 (2010).  We allow the employee's request for attorney's fees and costs in connection with MIIF's cross appeal.  See Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979).  The employee is directed to file with the clerk of this court materials detailing and supporting his request for such fees and costs within fourteen days of the issuance of the rescript in this case.  See Fabre v. Walton, 441 Mass. 9, 10 (2004).  MIIF will be afforded fourteen days to respond.

[7] As the employee did not prevail on his appeal of the reviewing board's decision, his request for fees and costs pursuant to G. L. c. 152, § 12A, is denied.